UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 06-21755-CIV-COOKE/BROWN

HENSEL PHELPS CONSTRUCTION CO.,

    Plaintiff,

v.

DRYWALL SYSTEMS INCORPORATED
OF SOUTH FLORIDA,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO VACATE DEFAULT AND FINAL JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Motion to Vacate Default and Final Judgment (DE 20), filed February 26, 2007. The Court having reviewed the Motion finds, for the reasons set forth below, that the Motion should be denied.

    **I.**    **BACKGROUND**

Plaintiff Hensel Phelps Construction Company ("Plaintiff" or "Hensel") filed this action on July 14, 2006. In its Complaint, Hensel alleges that it entered into an agreement with CNL Hotel & Resorts, Inc (the "Owner") to serve as the general contractor for the construction of the Doral Golf Resort & Spa Ballroom Facility (the "Project"). Hensel also alleges that it entered into a written agreement (the "Subcontract") with Defendant Drywall Systems Incorporated of South Florida ("Defendant" or "Drywall Systems") by which Drywall Systems agreed to provide light gauge metal framing, insulation, gypsum wall board and plaster for the Project. However, according to Hensel, Drywall Systems failed or refused to commence work on the Project as

required by the Subcontract. Hensel avers that on April 20, 2006 it served a notice of default upon Drywall Systems, but, Drywall Systems failed to cure the alleged default. Hensel further avers that it terminated the Subcontract, on June 21, 2006, due to Drywall Systems' alleged failure to cure the default. Hensel brought the present action to recover the damages it allegedly sustained as a result of Drywall Systems' alleged breach of the Subcontract.

## II.   PROCEDURAL HISTORY OF THIS CASE

As previously discussed, Hensel filed this action on July 13, 2006. Drywall Systems' registered agent was served with process on July 19, 2006. On August 10, 2006, Hensel moved for a clerk's entry of default against Drywall Systems for its failure to appear, answer or otherwise plead to the Complaint. Thereafter, a clerk's entry of default was entered against Drywall Systems. On September 7, 2006, Hensel filed a motion for default judgment against Drywall Systems. Then on September 27, 2006 this Court entered a Final Default Judgment, in the amount of $1,425,456.26, against Drywall Systems.

Drywall Systems filed the present Motion to Vacate Default and Final Judgment on February 26, 2007. Hensel filed its opposition on March 7, 2007. Drywall Systems filed its reply on March 14, 2007. Then Hensel filed a sur-reply on April 10, 2007. Thus, Drywall Systems Motion has been fully briefed and is ripe for adjudication.

## III.   ANALYSIS

In its Motion, Drywall Systems argues that mistake, inadvertence, and/or excusable neglect justify vacating the Default Final Judgment entered against it in this matter. Rule 55(c) of the Federal Rules of Civil Procedure provides for relief from defaults and default judgments. The Rule permits relief from defaults "for good cause shown," but requires that default

judgments be set aside in accordance with Rule 60(b) of the Federal Rules of Civil Procedure which relates to relief from final judgments.  Fed.R.Civ.P. 55(c).  Thus, this action is governed by Rule 60(b) of the Federal Rules of Civil Procedure.  Pursuant to Rule 60(b)(1) "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect."   Fed.R.Civ.P. 60(b)(1).  "To establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a defaulting party must show that: '(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint.'"  Valdez v. Feltman (In re Worldwide Web Systems, Inc.), 328 F.3d 1291, 1295 (11th Cir. 2003) (citing Florida Physician's Ins. Co., Inc. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993).  Because the Court finds that Drywall Systems has failed to establish a good reason for its failure to reply to the Complaint the Court will not address whether Drywall Systems has a meritorious defense or the potential prejudice which would be caused to Hensel if the Final Default Judgment were vacated.

      **A.**    **DRYWALL SYSTEMS FAILED TO ESTABLISH A GOOD REASON FOR FAILING TO REPLY TO THE COMPLAINT**

In its Motion, Drywall Systems contends that it had good reason for failing to reply to the Complaint because:

> Drywall Systems did not become aware of this action until on or around October 30, 2006 (i.e. after the Default and Final Judgment had been entered in this action) when Hensel served Drywall Systems' president, Ralph Grandinetti, with a subpoena *duces tecum* for deposition at Drywall Systems' main office.  This was due to the fact that its Registered Agent failed to promptly notify Drywall Systems of the action and because when the Summons and Complaint were finally sent by Registered Agent, it was rerouted to an offsite warehouse by Drywall Systems' landlord who failed to relay to Drywall Systems that the package was rerouted.

Mot. at 4 (citations omitted).  Drywall Systems additionally argues that its Motion to Vacate the Default and Final Judgment was delayed because:

> In November 2006, shortly after Drywall Systems leaned of this action, it retained the law firm of Fazio, Disalvo, Canno, Abers, Podrecca, Fazio, & Carroll ("Fazio") to represent it.  In December 2006 or January 2007, Fazio realized it had a conflict of interest which prevented it from representing Drywall Systems in this action.  Because of this conflict, Fazio declined to file any papers with the Court and notified Defendant that it would need new counsel.  Due to the disposition of the action at that time, Drywall Systems' efforts to secure replacement counsel proved difficult.  Consequently, Drywall Systems was left without representation and its president, Ralph Grandinetti was forced to appear for deposition without counsel.  Drywall Systems was not able to obtain the undersigned counsel to represent it until February 23, 2007.

Id. at n. 4.  The Court, however, finds Drywall Systems litany of excuses to be unavailing.

### 1.   DRYWALL SYSTEMS FAILURE TO ESTABLISH MINIMAL PROCEDURAL SAFEGUARDS PRECLUDES RELIEF

As previously discussed, Hensel filed this action on July 14, 2006.  Hensel filed a Return of Service on August 3, 2006.  The Return of Service indicated that the Complaint and Summons were served on Anthony G. Coleman — Drywall Systems' registered agent — on July 19, 2006 at 1:55 pm.  See DE 6.  Drywall Systems does contend that Anthony G. Coleman was not authorized to accept service on its behalf or that service upon Mr. Coleman was otherwise improper.  In fact, in his Affidavit Ralph Grandinetti, the president of Drywall Systems, admitted that the Complaint was served at the office of Drywall Systems' registered agent.  Grandinetti Aff. at ¶ 4.  Nevertheless, Drywall Systems argues that the Court should find excusable neglect because its registered agent delayed the forwarding of the Complaint to Drywall Systems' offices and failed to inform it about the contents or significance of the Complaint.[1]  Significantly,

---

[1] Additionally, Drywall Systems asserts that when its registered agent finally forwarded the process it was re-routed to an offsite warehouse by Drywall Systems' landlord who failed to

Drywall Systems did not present an affidavit or declaration from its registered agent regarding how the alleged delay in forwarding the Complaint occurred. Thus, the details surrounding the alleged delay in forwarding the Complaint remain enigmatic.

Nevertheless, this case appears to be in accord with the Eleventh Circuit's case law regarding a defendant's failure to establish minimum procedural safeguards. In Gibbs v. Air Canada, 810 F.2d 1529 (11th Cir. 1987), an underwriter sued Air Canada for gross negligence and willful misconduct where precious metals were stolen from cargo shipments in Air Canada's possession. A default judgment in the amount of $790,870.23 was entered against Air Canada after it failed to appear or otherwise respond to the complaint. Air Canada sought to vacate the default judgment, however, the district court denied the request. Thereafter, Air Canada appealed the decision to the Eleventh Circuit. In affirming the district court's opinion, the Eleventh Circuit stated "[d]efault that is caused by the movant's failure to establish minimum procedural safeguards for determining that action in response to a summons and complaint is being taken does not constitute default through excusable neglect." Id. at 1537 (citations omitted). The Eleventh Circuit described the relevant facts in Gibbs as follows:

> In this case, Air Canada's regional manager was served with process and forwarded it to in-house counsel in Montreal, Canada, via intercompany mail. The evidence of procedures presented by Air Canada related to the processing of mail designated for the legal department once it reached Montreal. . . . Air Canada admits that in-house counsel never returned the phone call to him from the regional manager regarding the complaint and that the regional manager never followed up to see if the process he put in the mail in fact reached its destination in Montreal. The only excuse Air Canada offers for the failure of process to reach Montreal is that a mail clerk must have misplaced the complaint. This is not a sufficient excuse.

---

inform Drywall Systems that the package had been re-routed.

-5-

Id. Similarly, in Baez v. S.S. Kresge Co., 518 F.2d 349 (5th Cir. 1975) the Fifth Circuit affirmed a district court's denial of a motion to vacate a default judgment.[2] In Baez, the complaint was served on the defendant's registered agent. The registered agent then mailed the process to the defendant's home office, but, the process was lost when the home office attempted to mail it to the defendant's local counsel. In reaching its conclusion, the Baez court stated:

> Second, we are urged to overturn the District Court's declination to relieve Kresge under F.R.Civ.P. 60(b). Kresge argues it is entitled to relief under subparagraph (6), but we disagree. Because the Postal Service not Kresge was responsible, it says, that provision should be invoked. But that ignores the fact that both Kresge's registered agent, and its home office, possessed the papers in ample time to prevent its own injury. The Postal Service, therefore, cannot be burdened with the full blame. We think rather minimal internal procedural safeguards could and should have been established which would have prevented this loss.

Id. at 350. See also Davis v. Safeway Stores, Inc., 532 F.2d 489 (5th Cir. 1976) (fact that defendant sent complaint to its insurance company in timely manner did not constitute excusable neglect when lack of communication between defendant and insurance company for three weeks, after latter received copy of complaint, indicated absence of minimum procedural safeguards). The present action appears to be analogous to Gibbs and Baez because in this matter the Complaint and Summons were properly served upon Drywall Systems' registered agent but Drywall Systems failed to establish sufficient minimum procedural measures to ensure that the process was properly forwarded and/or identified. Drywall Systems did not present any evidence to establish that it had any minimum procedural safeguards in place or that any procedural safeguards were violated by its registered agent. Thus, it appears that this case falls squarely

---

[2]Pursuant to Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir.1981), all decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent upon this Court.

within the doctrine set forth in Gibbs and Baez thereby defeating Drywall Systems' argument for excusable neglect.

### 2.     DRYWALL SYSTEMS' INEXPLICABLE DELAY IN SEEKING VACATUR PRECLUDES RELIEF

Further undermining Drywall Systems' argument for vacatur is the fact that it did not expeditiously move to vacate the default judgment. Drywall Systems did not file the present Motion until February 26, 2007 — approximately five months after this Court entered its Final Default Judgment. Drywall Systems contends that it did not become aware of the present action until October 30, 2006 when Hensel served Ralph Grandinetti, the president of Drywall Systems, with a subpoena *duces tecum*. Mot. at 4. This contention, however, lacks support. Hensel filed a motion for a clerk's entry of default against Drywall Systems on August 10, 2006. On August 11, 2006, a clerk's entry of default was entered against Drywall Systems. Thereafter, on September 7, 2006, Hensel filed a motion for default judgment. The certificate of service in Hensel's motion for default judgment indicates that the motion was served, via certified mail, upon Drywall Systems' registered agent. Notably, Drywall Systems did not argue or even suggest that its registered agent, Anthony G. Coleman, did not receive the default judgment motion. Moreover, Drywall Systems did not argue or suggest that Mr. Coleman failed to properly forward or notify it of the default judgment motion. Thus, it would appear that Drywall Systems should have received notice of this action and the default judgment motion on or around September 7, 2006.

Furthermore, Hensel asserts that it served a copy of the Final Default Judgment on Ralph

Grandinetti, via certified mail, on October 13, 2006.[3] To support this argument, Hensel presented the Court with a return receipt, signed by Donna Stahl of Drywall Systems, which indicates that Drywall Systems received a copy of the Final Default Judgment on October 13, 2006. Opp. Ex. A. In its reply, Drywall Systems did not dispute that it received a copy of the Final Default Judgment on October 13, 2006. Instead, Drywall Systems contends that even if it received notice of the Final Default Judgment on October 13, 2006 that notice was insufficient as it did not occur until after the Final Default Judgment was entered. Reply at 6. However, Drywall Systems' argument misses the mark. The October 13, 2006 notification date is important because it establishes that Drywall Systems had notification of this action almost three weeks prior to the date which Drywall Systems represented that it first received notification of this action. This fact undermines Drywall Systems' credibility in this action. Moreover, the October 13, 2006 date is pertinent because it establishes that Drywall Systems waited one hundred and thirty six days (136) after it received notification of the Final Default Judgment to file the present Motion. Drywall Systems attempts to sidestep this poignant fact by arguing that the delay in filing the present Motion should be considered insignificant because it was due to the problems it incurred with its counsel. Specifically, Drywall Systems argues that the counsel it initially retained, in November 2006, had a conflict of interest which prevented that legal team from filing any papers on Drywall Systems' behalf. Additionally, Drywall Systems argues that it was unable to retain further legal representation until February 26, 2007. At best this argument conveys a lack of diligence on Drywall Systems' part. Again, there is uncontested evidence that

---

[3] On September 27, 2006, This Court entered a Final Default Judgment, in the amount of $1,425,456.26, against Drywall Systems.

Drywall Systems received a copy of the Final Default Judgment on October 13, 2006. Nevertheless, Drywall Systems admits that it did not even retain counsel in this matter until sometime in November of 2006. Mot. at 4 n.4. Thus, Drywall Systems waited approximately one month to take the minimal step of retaining counsel in a matter where a Final Default Judgment, in the amount of $1,425,456.26, had been entered against it. Additionally, Drywall Systems admits that its initial counsel did not realize that it had a conflict of interest in this matter until some amorphous date in December of 2006 or January of 2007. Id. This is significant because it shows that Drywall Systems was represented by able counsel for at least one to two months before that counsel discovered the conflict of interest. Yet, during that one to two month period where it was represented by counsel Drywall Systems did not attempt to vacate the Final Default Judgment. It seems axiomatic that a party would move expeditiously in a matter where a Final Default Judgment, in the amount of $1,425,456.26, had been entered against it. But Drywall Systems failed to do so in the present action. The Court, therefore, finds that Drywall Systems' inexplicable delay in filing the present Motion precludes relief under 60(b)(1). See e.g. Equal Employment Opportunity Commission v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 529 (11th Cir. 1990) (finding that relief under 60(b)(1) was unavailable and noting that the defendant waited almost four months to move to set aside the default); Valdez, 328 F.3d at 1298 (finding inexplicable delay where party waited two months to file motion to vacate).

### IV.   CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Vacate Default and Final Judgment (DE 20) is **DENIED**. The Final Default Judgment in this matter shall remain in effect.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of August, 2007.

_____
MARCIA G. COOKE
United States District Judge

*Copies furnished to:*

*All Counsel of Record*